```
                              FILED
                         CLERK, U.S. DISTRICT COURT

                              4/28/2023

                         CENTRAL DISTRICT OF CALIFORNIA
                         BY: _____TV_____ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>       v.<br><br>CARINA HWANG,<br><br>            Defendant. | CR No. 23- 2:23-cr-00205-FLA<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 371: Conspiracy to Commit Wire Fraud; 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The United States charges:

### COUNT ONE

[18 U.S.C. § 371]

A. INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

Defendant and the Relevant Entities

1. Defendant, CARINA HWANG, was a resident of Glendale, California, within the Central District of California.

2. CC-1, who is now deceased, was a resident of Rancho Cucamonga, California, within the Central District of California.

3. CC-2 was a resident of Mira Loma, California, within the Central District of California.

4. Defendant, with the assistance of CC-1, CC-2, and others, falsely claimed to be the owner of numerous businesses located in California, including: Concept More Inc., located in Rancho Cucamonga, California, Mono Control Inc., located in Rancho Cucamonga, California, Plaza Space Inc., located in Rancho Cucamonga, California, Stage Seven LLC, located in Alta Loma, California, Plan

All Inc., located in Alta Loma, California, Global Need Inc., located in Rancho Cucamonga, California, 4cross Inc., located in Rancho Cucamonga, California, Best Motion Inc., located in Glendale, California, and Corner Stage Inc., located in Rancho Cucamonga, California (collectively the "Fake Companies").

<u>The Economic Injury Disaster Loan Program</u>

5. The Economic Injury Disaster Loan Program ("EIDL") was a United States Small Business Administration ("SBA") program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

6. The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

7. To obtain an EIDL loan, a qualifying business was required to submit an application to the SBA and provide information about the business's operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDL loans for COVID-19 relief, the 12-month period was the 12-month period from January 31, 2019, to January 31, 2020. The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

8. EIDL loan applications were submitted directly to the SBA and processed by the agency with support from a government contractor. If the application was approved, the amount of the loan was based, in part, on the information provided by the applicant

about employment, revenue, and cost of goods sold.  Any funds issued under an EIDL loan were issued directly by the SBA.

    9.  EIDL loan funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

B.  THE OBJECT OF THE CONSPIRACY

    10.  Beginning in or around April 2020 and continuing until at least in or around May 2021, in Los Angeles, Orange, and San Bernadino Counties, within the Central District of California, and elsewhere, Defendant, CARINA HWANG, knowingly and intentionally conspired with CC-1, CC-2, and others to commit wire fraud, that is, to knowingly, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmit and cause to be transmitted, by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

C.  THE MANNER AND MEANS OF THE CONSPIRACY

    11.  The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:

        a.  CC-1, CC-2, and others, with the knowledge and consent of Defendant, submitted and caused to be submitted online fraudulent applications for EIDL loans in Defendant's name and on behalf of the Fake Companies.

b.      Additionally, the conspirators created fake company documents and registered certain of the Fake Companies with the California Department of State, Business Programs Division, so that the companies appeared to be authentic businesses and appeared to be in operation when the fraudulent loan applications were filed.

c.      CC-1, CC-2, and others, with the knowledge and consent of Defendant, knowingly made and caused to be made false statements to the SBA in connection with the fraudulent applications for EIDL loans, including false statements about: (i) the number of employees at the Fake Companies; (ii) the gross revenues for the 12-month period preceding the pandemic; (iii) the cost of goods sold by the Fake Companies in the 12-month period preceding the pandemic;(iv) the truth and accuracy of all the information and documents submitted in connection with the applications; and (v) the intended use of the loan proceeds, including false certifications that the loan proceeds would be used for permissible business purposes.

d.      Defendant, at the direction of CC-1, opened bank accounts at various financial institutions in the name of the Fake Companies, listing herself as the sole signatory, for the purpose of receiving the proceeds of the fraudulent EIDL loan applications. After the accounts were created, Defendant gave CC-1 control over the bank accounts by providing CC-1 the debit cards and pre-signed blank checks associated with the accounts.

e.      After the SBA funded the applied-for EIDL loans, CC-1 gave a portion of the proceeds to Defendant, CC-2, and others, and Defendant used a portion of the fraudulently obtained EIDL loan proceeds for her own personal benefit, including for non-business expenditures not permitted under the EIDL program.

12. In total, between in or around April 2020 and in or around May 2021, CC-1, CC-2, and others, with the participation of Defendant, submitted and caused the submission of at least eleven false and fraudulent EIDL loan applications listing the Defendant as the owner of the applicant companies, and they transmitted these applications via interstate wires to the SBA, resulting in the funding and disbursement of at least approximately $607,200 in illegally obtained loan proceeds from the SBA.

D. OVERT ACTS

13. On or about the following dates, in furtherance of the conspiracy and to accomplish its object, Defendant and her co-conspirators, including CC-1 and CC-2, committed the following overt acts, among others, in Los Angeles, Orange, and San Bernadino Counties, within the Central District of California, and elsewhere:

Overt Act No. 1:  On or about June 23, 2020, Defendant, together with CC-1, CC-2, and others, opened and caused to be opened a bank account in the name of Corner Stage, Inc. at Chaffey Federal Credit Union, ending in x7861. Defendant was listed as the CEO of Corer Stage Inc.

Overt Act No. 2:  On or about June 23, 2020, Defendant, together with CC-1, CC-2 and others, filed and caused to be filed an EIDL application in the name of Corner Stage Inc. with the SBA, falsely indicating that Corner Stage, Inc. had eleven employees as of January 1, 2020, and had gross revenues in the amount of $289,000 from January 31, 2019 to January 31, 2020.

Overt Act No. 3:  On or about July 20, 2020, Defendant, together with CC-1, CC-2, and others, opened and caused to be opened

a bank account in the name of Mono Control Inc. at Comerica Bank, ending in x6428.

<u>Overt Act No. 4</u>:   On or about July 20, 2020, Defendant, together with CC-1, CC-2, and others, filed and caused to be filed an EIDL application in the name of Mono Control Inc. with the SBA, falsely indicating that Mono Control Inc. had five employees as of January 1, 2020, and had gross revenues in the amount of $258,200 from January 31, 2019 to January 31, 2020.

## FORFEITURE ALLEGATION
[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

14. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count One of this Information.

15. The defendant, if so convicted, shall forfeit to the United States of America the following:

    a. All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense; and

    b. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

16. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as

the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

Glenn S. Leon  
Chief  
Fraud Section, Criminal Division  
U.S. Department of Justice

*/s/ BB*

BRANDON BURKART  
Trial Attorney, Fraud Section  
U.S. Department of Justice

Edward Emokpae  
Trial Attorney, Fraud Section  
U.S. Department of Justice